UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS WASHINGTON,       )
                         )
         Plaintiff,      )
                         )
v.                       )          No. 4:19-CV-1041 SNLJ
                         )
ROBERT WUDEL, et al.,    )
                         )
         Defendants.     )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Thomas Washington (registration no. 1171509), an inmate at Missouri Eastern Correctional Center ("MECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $6.56. *See* 28 U.S.C. § 1915. Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $32.82 Accordingly, the Court will assess an initial partial filing fee of $6.56.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.*

at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

**The Complaint**

Plaintiff, Thomas Washington, an inmate at Missouri Eastern Correctional Center ("MECC"), brings this action pursuant to 42 U.S.C. § 1983. He names the following individuals as defendants in this action: Robert Wudel (Doctor); Dana Jost (Nurse Practitioner); Corizon Medical Service; and Jeffrey Clark (Nurse). Plaintiff brings this action against defendants in both their individual and official capacities.

Plaintiff asserts that between the months of August and September 2012, during his incarceration at Southeast Correctional Center ("SECC"), he developed hair loss. He states that he continued losing his hair during the next year, and he submitted medical service requests at SECC to review his situation, although he does not indicate to whom he submitted those requests.

Plaintiff states that in August of 2013, he was transferred to Farmington Correctional Center ("FCC"). He claims that after his transfer to FCC, he was examined by defendant Dana Jost and Jeffrey Clark, both nurses at the facility. Plaintiff alleges that he was told by defendants that he was suffering from Tinea Capitis, ringworm of the scalp. He was given a variety of treatment at FCC, without success. Plaintiff states that he was then given a second diagnosis, however, of Alopecia Areata in June of 2014, by an unnamed medical doctor, and various other treatments were tried. Plaintiff admits that various shampoos, pills, "treatments," and injections were tried. Nonetheless, nothing seemed to work.

Plaintiff states that at present he is completely bald, and he has no hair on his scalp or body, as he suffers from Alopecia Universalis. He states that while at FCC, Dr. Robert Wudel

told him that he was unable to treat his condition because of his thyroid condition. Plaintiff complains that even when his thyroid condition "got better" Dr. Wudel "refused." Plaintiff claims that Dr. Wudel told him that his concern was that his hair would just fall out again. The doctor told plaintiff that he would "leave it to a specialist upon [his] return to society."

Plaintiff claims that in December of 2014, he went to medical to get his blood drawn for the purposes of checking his psychiatric medication levels. He states that Nurse Courtney noticed that his pupils were dark yellow and when she examined his forearm, she noticed his body was hot and flushed. Plaintiff alleges that he was placed in ICU at FCC and diagnosed as having the flu. He claims he was escorted to medical confinement with another inmate, but he asserts that his cell was poorly insulated, dusty, had mice in the walls, and not conducive to good health. Plaintiff states that during this time period his presumed flu was treated with Tylenol.

Plaintiff asserts that after a few days when it became apparent he was not getting better, he was taken to the local hospital, sometime around January of 2015, where they discovered he had edema due to "leaky tissues," and sodium accumulated around his liver and kidneys. He was soon after diagnosed with sarcoidosis, and he underwent surgery to remove damaged tissue. Plaintiff claims that he was told by a physician at the hospital that his pain with sarcoidosis was a matter for his regular doctors. He does not indicate whether the physicians at FCC adequately treated his pain.

Plaintiff claims that between January and February of 2015, he lost almost seventy-five pounds of edema and was placed on prednisone to treat the sarcoidosis. Plaintiff does not state who placed him on the prednisone, but he complains that it has caused gynecomastia, or an over-development of breast tissue, in his left breast. Plaintiff states that he was diagnosed with the condition by a doctor at MECC in 2019, despite starting the prednisone in 2015. Plaintiff does not state how long he actually took/was taking the prednisone for his sarcoidosis.

In his request for relief, plaintiff seeks compensatory damages.

**Discussion**

Plaintiff's claims for deliberate indifference to his medical needs fail to state a claim upon which relief may be granted with respect to plaintiff's claims against defendants in their individual capacities.[1]

Taking the allegations in the complaint as true, plaintiff knew as early as June 2014 that he was suffering from Alopecia Areata and that none of the medical interventions attempted by defendants Wudel, Jost or Clark had worked for plaintiff. He states that pills, injections, shampoos and other treatments had been used without success by that time. And plaintiff states that Dr. Wudel told him that he could no longer attempt to treat his disease after that time because of plaintiff's thyroid disease. Although plaintiff disagrees with Dr. Wudel's decision not to try additional treatments in conjunction with plaintiff's thyroid treatments, such disagreement does not state a claim for deliberate indifference.

To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Dulany v.*

---

[1] Plaintiff's claims against defendants in their official capacities also fail to state a claim upon which relief may be granted. Although plaintiff has not indicated whether defendants are employees of the Missouri Department of Corrections or Corizon Medical Services, it matters not. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. If defendants are employees of the State of Missouri, they cannot be considered persons under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). If the employees are considered employees of Corizon, in order to state a claim against an official in his or her official capacity, plaintiff must allege that a policy or custom of his or her employer is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of Corizon was responsible for the alleged violations of plaintiff's constitutional rights. Therefore, plaintiff's allegations against Corizon fail to state a claim upon which relief may be granted.

*Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs.

The record therefore shows that defendants were treating plaintiff's Alopecia disease pursuant to their medical training for several years and it wasn't until all available treatments were tried that defendants stopped such treatments. Additionally, although plaintiff makes much of defendant Wudel's decision to stop treatment for his Alopecia during plaintiff's difficulties with his thyroid, the Court must defer to the doctor's medical decisions with regard to this issue. As such, he has failed to state a claim for relief with respect to his Alopecia claims.

Similarly, plaintiff cannot state a claim for deliberate indifference with respect to his sarcoidosis diagnosis. Although defendants may not have recognized that plaintiff was suffering from sarcoidosis at the beginning of his acute illness, the medical providers recognized that he was in need of acute care and monitoring, which plaintiff admits that he was given. Plaintiff also admits that within just a few days of monitoring and care he was taken to the hospital for additional testing as to his illness. For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Thus, plaintiff has failed to show that defendants were deliberately indifferent to his medical needs with respect to his sarcoidosis.

As for plaintiff's claims that he developed gynecomastia as a result taking prednisone for his sarcoidosis, the Court cannot say that this was deliberate indifference on behalf of defendants. Plaintiff has not indicated who prescribed him prednisone for treatment for sarcoidosis, nor has he alleged whether he was told of the potential side effects of the drug and if

there were other treatments available for his sarcoidosis, i.e. the cost/benefit analysis of taking the treatment. Thus, plaintiff cannot show that he was subjected to deliberate indifference by the defendants in this lawsuit for being prescribed prednisone for his sarcoidosis.

Last, the Court will address plaintiff's assertions that his conditions of confinement were in violation of the Eighth Amendment during his medical isolation. The Supreme Court has stated that the "Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 492 U.S. 337, 349 (1981), and that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a § 1983 conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Although the Constitution does not mandate comfortable prisons, inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957 (8th Cir. 1994) (internal quotation and citations omitted). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991)). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* (quoting *Wilson*, 501 U.S. at 305). "Conditions, such as a filthy cell, may be 'tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

To state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must show that the alleged deprivations denied him the minimal civilized measure of life's necessities and that defendants were deliberately indifferent to excessive risk to

his health or safety. *E.g., Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) ("Eighth Amendment does not absolutely bar placing an inmate in a cell without clothes or bedding.").

Unfortunately, plaintiff's allegations that he was in a medical isolation cell for just a few days which was poorly insulated, dusty, had mice in the walls, and not conducive to good health simply does not suffice as unconstitutional conditions of confinement in this instance. Thus, plaintiff's Eighth Amendment claims regarding his cell conditions in medical isolation are also subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $6.56 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED AS MOOT**.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 19th day of March, 2020.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE